**Affirmed as Modified; Opinion Filed July 21, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00895-CR

### EDUARDO RAYO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F15-75460-I**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Evans
Opinion by Justice Evans

Eduardo Rayo was convicted of capital murder and sentenced to life imprisonment without the possibility of parole. Appellant raises two issues on appeal alleging that the jury charge contained error by authorizing the jury to convict appellant of the offense of conspiracy and failing to properly apply the law of parties to the facts. We modify the trial court's judgment to reflect appellant was convicted of capital murder by committing or attempting to commit robbery. As modified, we affirm the trial court's judgment.

### BACKGROUND

On April 11, 2015, Heather Molina was at home with her second husband and five children.[1] Denise Jasso and her four youngest children also lived in the apartment. Heather was

---

[1] The children lived with their father during the week and went to their mother's house every weekend.

in the bedroom with her husband. Heather's son, Anthony, and her daughter, April were in the living room. Heather's daughter, Monica, and two of Denise's children, Angel and Maria, were outside in the back on the patio. At about 10:00 p.m., there was a knock on the door. A few moments after Heather answered the door, she was shot by one of the men. She died as a result of a gunshot wound to the head. She also had a blunt force injury to her forehead from being struck by some object, like the muzzle of a firearm.

All five children testified about what they saw and heard that night when the men came to the apartment. Anthony testified that when his mother opened the door, he saw two men wearing hoodies. They both walked inside. One man had a revolver. One of the men told him to go to the couch and pointed a gun at his head. He heard one man say, "get the money, get the money." He heard a huge bang and saw a flash. After the men left, he saw his mother was covered in blood.

Monica testified that while she was on the patio, she saw two Hispanic men approach the apartment, one with a jacket and one with a hat. One of the men asked for Weda, her mother's nickname. When Monica walked inside, her mother was already at the front door. She saw one of the men hitting her mother in the face, and her mother punching back. She then saw a flash and heard a gun. After seeing the flash, Monica ran outside to neighbor's house and asked for help.

April testified that when her mother opened the front door, she saw two men, both wearing all black with work shoes and hoodies. The men were talking to each other, saying "you grab the money." Both men were holding guns. The first one through the door hit her mother with the gun. April told her mother to put her hands up and then she heard a gunshot. One of the men stayed by the door, pointing his gun into the apartment while the other man went through

the apartment to the patio, pointing his gun at her and Anthony, and telling them to get down. About a minute later, both men ran off together through the front door.

Angel testified that he saw two men approach the apartment and knock on the door. They said they were looking for Weda and that Polo had sent them. He saw the men slam open the door and both men enter the apartment. He heard them say to Heather, "Give me the money" and heard Heather say, "Please don't hurt me; just take it; please don't hurt me." Angel saw one of the men holding the gun towards Heather's head and shoot her. The other man was standing about two feet behind the man who shot her. Angel then saw the man move towards Heather and lean down towards her body. The shooter then ran out of the apartment towards the patio, pointed the gun at Angel and his sister, and then ran back into the apartment. Both of the men ran out of the front door of the apartment together. Angel gave the police a description of what one of the men was wearing, a blue sweatshirt and blue jeans. The other man's clothing looked similar. Angel identified appellant in court as the shooter. He recognized him because of the tattoo and was 100% certain that appellant was the man who shot Heather. Angel testified that about a month before the shooting, he was looking out his window and saw Heather talking to appellant in a car.

Maria testified that she saw two Mexican men knock on the door to the apartment. They were looking for Weda and said Polo had sent them. Earlier that day, Heather told Maria to let her know if anyone arrived saying Polo had sent them. After Heather answered the door, and the men told her that Polo had sent them, she heard screaming and a commotion. Maria then heard one men say, "give me the fucking money; give me the fucking money." She also heard Heather screaming, "just take it; just take it; please don't hurt me." Two seconds after that, she heard the gunshot. After the gun went off, Monica came running out of the apartment, jumped the patio

fence, and took off running. She saw the man in the white shirt run out. The man in the dark shirt came out to the patio and pointed a gun at her and her brother and then ran out.

Abby Vanatta was a drug addict and bought heroin from Heather. She testified that Heather worked for Polo and would give Polo some of the money she got from selling the drugs. On the day Heather was killed, she and Polo were having a dispute about money Polo thought Heather owed him.

Officer Shutka and his partner responded to the shots fired call at the apartments. While they were setting up a crime scene perimeter, a man flagged them down and gave them a description of the vehicle the suspects left in. The police also had appellant's name and address from a 911 caller. After a deployment team saw the suspect vehicle near the scene, Officer Shutka and his partner stopped it. Appellant was the driver, and his wife was the passenger.

A gunshot residue test was performed on appellant while he was in the back of the patrol car after being taken into custody. The results were consistent with appellant having recently fired a firearm, as well as being near a firearm that was fired.

Detective Tabor conducted a lengthy interview with appellant which was admitted into evidence and played for the jury. During the interview, appellant admitted that he went to Heather's apartment with another man that night. Appellant's wife was also with them and drove them out of the apartment complex. Appellant also admitted that he and the other man went to the door and said Polo sent them. He described the events leading to the shooting, the same way the children described them. Appellant said that the other man pulled a gun out of his pocket and when Heather came to the door, he went in and shot her. Appellant said he thought they were just going there to get drugs and money and denied knowing that a shooting would occur. Appellant admitted that they got the dope and that he got a portion of what was taken from the house.

## ANALYSIS

### Jury Charge

In his first issue, appellant argues that the theory of conspiracy in the court's charge constituted error because the offense of conspiracy had not been alleged in the indictment and was not a lesser included offense of capital murder. The State argues that the court's charge did not instruct the jury to consider whether appellant was guilty of criminal conspiracy but instead properly instructed the jury on conspiracy as a party under penal code section 7.02(b).

A person may be convicted as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01(a) (West 2011). Under section 7.02(a), a person is criminally responsible as a party if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). Section 7.02(b) provides another theory of party liability as a co-conspirator:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b). The law of parties, as stated in section 7.02 may be applied to a case even though no such allegation is contained in the indictment. *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). In addition, the theory of criminal responsibility set forth in section 7.02(b) is applicable in capital murder cases. *Id*.

Here, the abstract portion of the court's charge included instructions on the law of parties from both subsections (a) and (b) of section 7.02. It also defined "conspiracy" in accordance with the definition of "criminal conspiracy" in Texas Penal Code § 15.02(a) as follows:

> "Conspiracy" is committed if, with intent that a felony be committed, a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and he or one or more of them performs an overt act in pursuance of the agreement.

The application portion of the court's charge authorized appellant's conviction for capital murder as the perpetrator of Heather's death, as a party to the offense under the law of parties set forth in section 7.02(a), or as a party to the offense under the law of parties set forth in section 7.02(b). Specifically, regarding the third theory, the charge instructed the jury:

> If you believe from the evidence beyond a reasonable doubt that the defendant, Eduardo Rayo, entered into a conspiracy with an unknown person to commit the felony offense of robbery and that on or about the 11th day of April, 2015 in Dallas County, Texas, in the attempt to carry out this agreement, if any, the unknown person did then and there intentionally cause the death of an individual, Heather Molina, by shooting the said Heather Molina with a deadly weapon, to-wit: a firearm, if he did, and that such offense was committed in furtherance of the unlawful purpose of the conspiracy to commit robbery, and was an offense that should have been anticipated as the result of the carrying out of the agreement, then you will find the defendant, Eduardo Rayo, guilty of the offense of Capital Murder, though he may have had no intent to commit it, and so say by your verdict.

The court of criminal appeals has addressed the same argument that appellant makes here. In *Montoya*, the court of criminal appeals rejected the appellant's argument that including the theory of conspiracy in the court's charge erroneously allowed the jury to consider whether the appellant was guilty of the separate offense of criminal conspiracy under section 15.02 of the penal code. *Montoya*, 810 S.W.2d at 165. The court held the charge, which defined the term "conspiracy," "merely contained an alternative 'parties' charge as provided in [penal code section] 7.02(b)." *Id.*; *Murkledove v. State*, 437 S.W.3d 17, 22–23 (Tex. App.—Ft. Worth 2014, pet. dism'd, untimely filed). Likewise, in this case, the charge properly allowed the jury to find appellant guilty of capital murder under the law of parties. We overrule appellant's first issue.

–6–

In appellant's second issue, he contends that the jury charge on capital murder failed to properly apply the facts to the law of parties under section 7.02(a)(2). If the evidence supports, and the charge authorizes the jury to find that appellant himself shot Heather, there is no need to rely on the theory of parties to support the conviction. *See Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978); *Reyes v. State*, 422 S.W.3d 18, 28 (Tex. App.—Waco 2013, pet. ref'd). Further, if the evidence supports, and the charge authorizes the jury to find that the appellant was guilty under section 7.02(b), there is no need to rely on the theory of parties under section 7.02(a)(2) to support the conviction. *Wallace v. State*, 618 S.W.2d 67, 69 (Tex. Crim. App. 1981); *Hardmon v. State*, No. 05-95-01841-CR, 1997 WL 331006 at *9 (Tex. App.—Dallas June 18, 1997, no pet.) (not designated for publication). In this case, the evidence supported appellant's conviction both as a principal and as a party under section 7.02(b).[2] Thus, we need not address appellant's contention that his conviction should be reversed because the trial court failed to apply the law to the facts under section 7.02(a)(2). We overrule appellant's second issue.

## Modification of Judgment

The trial court's judgment reflects that appellant was convicted of "capital murder by terror threat/other felony." However, the record reflects that appellant was convicted of capital murder by committing or attempting to commit robbery. Accordingly, we modify the section of the judgment titled "Offense for which Defendant Convicted" to state "capital murder by committing or attempting to commit robbery." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865

---

[2] During the charge conference, appellant's counsel argued that he was entitled to have the theory under which [appellant] would be a party under 7.02(a)(2) specifically set out in the application paragraph. When the trial court asked what facts [he wanted applied], appellant's counsel responded that he did not believe there were any facts, "Because if he's guilty as a party, he's guilty only under the law of conspiracy." In addition, appellant acknowledges that, based on the evidence, he could have been found guilty "either individually or as a party to the offense."

S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd.).

## CONCLUSION

We modify the trial court's judgment to reflect that appellant was convicted of capital murder by committing or attempting to commit robbery.  As modified, we affirm the trial court's judgment.


<u>/David W. Evans/</u>
DAVID EVANS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
160895F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EDUARDO RAYO, Appellant

No. 05-16-00895-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F15-75460-I.
Opinion delivered by Justice Evans, Justices
Bridges and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect Eduardo Rayo was convicted of capital murder by committing or attempting to commit robbery. As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 21st day of July, 2017.