COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-418-CR
 

 
JASON MATTHEW TRUVER                                                   APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
------------
 
FROM THE 371ST 
DISTRICT COURT OF TARRANT COUNTY
 
------------
MEMORANDUM OPINION[1]
------------
        Appellant 
Jason Matthew Truver was charged with capital murder, found guilty of murder by 
a jury, and sentenced to twenty-five years’ imprisonment. In three points, he 
argues that the trial court erred in overruling his objection to the State’s 
failure to give any notice in the indictment of its intent to rely on the law of 
parties in proving his culpability, the evidence is insufficient to support his 
conviction, and the trial court erred in not conducting a hearing on his motion 
for new trial. We affirm.
        On 
August 9, 1999, William Klozik came to appellant’s apartment to buy drugs from 
him. Appellant claimed that instead of buying drugs, however, Klozik stole them. 
While appellant was discussing this event with Shad Hocutt and Jeremy Ricketts, 
Klozik called appellant and told him that he would sell the drugs back to him. 
Hocutt testified that he, Ricketts, and appellant planned to meet Klozik and get 
the drugs back, using force if needed.
        Appellant, 
Ricketts, and Hocutt went to the meeting location before Klozik arrived in order 
to scope out the area to ensure that no police were around. After dropping off 
Ricketts and Hocutt at the location, appellant drove down the block and 
returned. Meanwhile, Ricketts and Hocutt hid.
        Klozik 
arrived and parked his car. After seeing a police car drive by, Hocutt became 
nervous and decided to leave. As he was walking to a nearby store to call 
someone for a ride, he heard a gunshot. Hocutt then ran back toward the service 
road where appellant was parked. Hocutt saw Klozik running away from 
appellant’s car and tackled him. Realizing Klozik did not have a gun, he let 
him go. Hocutt then heard Ricketts shout, “[L]ook out.” As Hocutt ran toward 
appellant’s car, he heard another gunshot behind him. Hocutt got into the 
passenger seat, and appellant was already inside the car. Ricketts ran up to the 
car and got into the back seat, and appellant drove them to Ricketts’s house. 
At Ricketts’s house, appellant and Ricketts talked about returning to the 
scene, and Hocutt called his girlfriend to pick him up.
        Mike 
Wealand, an inmate who shared a cell with appellant while he awaited trial, 
testified that appellant told him about the events. He stated that Klozik had 
stolen drugs from appellant and then wanted appellant to loan him money for a 
car. Appellant told Wealand that he picked up two guys and went to meet Klozik. 
Appellant said that when they got to the meeting location, Ricketts showed 
appellant that he was carrying a gun under his shirt. Appellant told Wealand 
that he was also carrying a gun when he met Klozik.
        Appellant 
told Wealand that after arriving at the meeting location, Klozik got in his car 
and wanted money. When appellant showed him an envelope, Klozik grabbed it and 
took off. One of appellant’s companions knocked Klozik down, and appellant 
said he saw a laser light moving and then heard a shot. Appellant and his 
companions then left the scene. Appellant dropped one man off and then returned 
with Ricketts to the scene, retrieved the money, and took the car to another 
location to look for the drugs.
        The 
jury found appellant guilty of murder and assessed punishment at twenty-five 
years’ imprisonment. This appeal ensued.
        In 
appellant’s first point, he contends that the trial court abused its 
discretion in overruling his pretrial objection to the “State’s failure to 
give any notice of its intent to rely upon the law of parties in order to 
establish [his] culpability . . . and allowing the State to rely upon such 
unplead [sic] legal theory before the jury at trial.” Pursuant to section 
7.02(b) of the penal code, the jury was charged, among other things, that it 
could find appellant guilty of murder if it found that he entered into a 
conspiracy with another or others to commit a felony offense of possession of a 
controlled substance, to wit: methamphetamine of more than four grams but less 
than 200 grams, that in attempting to carry out this agreement, Jeremy Ricketts 
did then and there intentionally cause the death of Klozik by shooting him with 
a firearm, that such offense was committed in furtherance of the unlawful 
purpose of possession of methamphetamine, and that the offense should have been 
anticipated as a result of carrying out the agreement. See Tex. Penal Code Ann. § 7.02(b) (Vernon 
2003). Under the law of parties, there is no requirement that the State allege 
in the indictment facts that make the defendant individually criminally 
responsible for the conduct of another.[2]  Marable 
v. State, 85 S.W.3d 287, 292 (Tex. Crim. App. 2002) (holding that if 
evidence supports charge on the law of parties, then trial court may charge on 
the law of parties even though there is no such allegation in the indictment). 
We overrule point one.
        In 
appellant’s second point, he contends that the evidence is legally and 
factually insufficient to support the verdict. In reviewing the legal 
sufficiency of the evidence to support a conviction, we view all the evidence in 
the light most favorable to the verdict in order to determine whether any 
rational trier of fact could have found the essential elements of the crime 
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. 
Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. 
App. 2001). This standard gives full play to the responsibility of the trier of 
fact to resolve conflicts in the testimony, to weigh the evidence, and to draw 
reasonable inferences from basic facts to ultimate facts. Jackson, 443 
U.S. at 319, 99 S. Ct. at 2789. When performing a legal sufficiency review, we 
may not sit as a thirteenth juror, re-evaluating the weight and credibility of 
the evidence and, thus, substituting our judgment for that of the fact finder. Dewberry 
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. Johnson 
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 
S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is factually insufficient 
if it is so weak as to be clearly wrong and manifestly unjust or the adverse 
finding is against the great weight and preponderance of the available evidence. 
Johnson, 23 S.W.3d at 11. Therefore, we must determine whether a neutral 
review of all the evidence, both for and against the finding, demonstrates that 
the proof of guilt is so obviously weak as to undermine confidence in the 
verdict, or the proof of guilt, although adequate if taken alone, is greatly 
outweighed by contrary proof. Id. In performing this review, we are to 
give due deference to the fact finder’s determinations. Id. at 8-9; Clewis, 
922 S.W.2d at 136. We may not substitute our judgment for that of the fact 
finder’s. Johnson, 23 S.W.3d at 12. Consequently, we may find the 
evidence factually insufficient only where necessary to prevent manifest 
injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997).
        Three 
options were available to the jury to find that appellant committed murder: (1) 
appellant either acting alone or with another or others as a party to the 
offense, did then and there intentionally or knowingly cause the death of Klozik 
by shooting him with a firearm; (2) appellant either acting alone or with 
another or others as a party to the offense, did then and there intentionally, 
with the intent to cause serious bodily injury to Klozik, commit an act clearly 
dangerous to human life, namely shooting Klozik with a firearm; and (3) 
appellant entered into a conspiracy with another or others to commit a felony 
offense of possession of a controlled substance, to wit: methamphetamine of more 
than four grams but less than 200 grams, that in attempting to carry out this 
agreement, Jeremy Ricketts did then and there intentionally cause the death of 
Klozik by shooting him with a firearm, that such offense was committed in 
furtherance of the unlawful purpose of possession of methamphetamine, and that 
the offense should have been anticipated as a result of carrying out the 
agreement. Where the jury is authorized to convict on any one of several methods 
of commission of the same offense and returns a general verdict of guilty, the 
verdict will be upheld if the evidence is sufficient to sustain the conviction 
under at least one of the theories presented to the jury. Kitchens v. State, 
823 S.W.2d 256, 258 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 958 
(1992); Patterson v. State, 46 S.W.3d 294, 300 (Tex. App.—Fort Worth 
2001, no pet.).
        In 
determining whether a defendant participated as a party in the commission of an 
offense, the fact finder may look to events that occurred before, during, or 
after the offense and may place reliance on acts showing an understanding and 
common design. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App.) 
(op. on reh’g), cert. denied, 519 U.S. 1030 (1996). An agreement of the 
parties to act together in a common design seldom can be proven by direct 
evidence; reliance, therefore, may be placed upon the actions of the parties, 
showing either by direct or circumstantial evidence an understanding and common 
design to do a certain act. Burdine v. State, 719 S.W.2d 309, 315 (Tex. 
Crim. App. 1986), cert. denied, 480 U.S. 940 (1987); Rivera v. State, 
990 S.W.2d 882, 887 (Tex. App.—Austin 1999, pet. ref’d), cert. denied, 
528 U.S. 1168 (2000).
        Under 
Texas Penal Code section 7.02, a person is criminally responsible for an offense 
committed by the conduct of another if:
 
[I]n the attempt to carry out 
a conspiracy to commit one felony, another felony is committed by one of the 
conspirators, all conspirators are guilty of the felony actually committed, 
though having no intent to commit it, if the offense was committed in 
furtherance of the unlawful purpose and was one that should have been 
anticipated as a result of the carrying out of the conspiracy.
 
Tex. Penal Code Ann. § 7.02(b). 
Although the penal code provides no definition for “conspiracy” as that term 
is used in section 7.02(b), the trial court properly defined the term for the 
jury using its commonly understood meaning:
 
[A]n agreement between two or 
more persons, with intent that a felony be committed, that they, or one or more 
of them, engage in conduct that would constitute the offense. An agreement 
constituting a conspiracy may be inferred from acts of the parties.

 
See Ladd v. State, 3 
S.W.3d 547, 565 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070 
(2000).
        If 
there is evidence to support the conviction under section 7.02(b), the State did 
not need to prove that appellant had the intent to kill Klozik. See Ruiz v. 
State, 579 S.W.2d 206, 209 (Tex. Crim. App. [Panel Op.] 1979); Barnes v. 
State, 56 S.W.3d 221, 228-29 (Tex. App.—Fort Worth 2001, pet. ref’d). 
Under section 7.02(b), the State was required only to prove that Klozik’s 
murder should have been anticipated as a result of carrying out the conspiracy 
to possess the methamphetamine. See Tex. Penal Code Ann. § 7.02(b); Barnes, 
56 S.W.3d at 228-29.
        Three 
witnesses provided testimony that supports the jury’s finding that appellant 
engaged in a conspiracy to possess methamphetamine, and in the furtherance of 
committing that unlawful purpose, Ricketts murdered Klozik, and the murder 
should have been anticipated. Hocutt testified that after Klozik stole the drugs 
from appellant, he, Ricketts, and appellant discussed getting the drugs back 
from him. Hocutt told appellant that if Klozik refused to return the drugs, they 
could beat him up and get the drugs back. After appellant received Klozik’s 
call, Hocutt, appellant, and Ricketts went to the meeting place to get the drugs 
back. Hocutt believed that Ricketts shot Klozik.
        Shannon 
Slape, Ricketts’s girlfriend, testified that she was at Ricketts’s house 
when appellant came over and told Ricketts and Hocutt that Klozik had stolen 
drugs from him. She heard Hocutt, Ricketts, and appellant discussing how to get 
the drugs back from Klozik. She also overheard the three men talking about 
beating up Klozik or even killing him. She never thought someone would actually 
be killed, however.
        Wealand 
testified that appellant told him that he and two other companions went to meet 
Klozik to get the drugs back after Klozik stole them. Appellant told Wealand 
that he was aware Ricketts had been drinking on the day of the murder and that 
Ricketts had been having trouble with his girlfriend. He told Wealand that he 
almost left Ricketts behind because he was concerned about Ricketts’s 
attitude. Wealand also testified that when the three companions got close to the 
meeting place, Ricketts pulled up his shirt and showed appellant that he was 
carrying a gun. Appellant said that he almost turned around to take Ricketts 
back, but Klozik called him at about the same time; consequently, he decided to 
go ahead with the meeting. Finally, appellant told Wealand that appellant was 
also carrying a gun when he went to meet Klozik. Appellant’s weapon was 
recovered by the police from appellant’s apartment after the murder; it was 
loaded and had a bullet in the chamber. Ricketts’s weapon was never found, but 
the caliber of the fragmented bullet found in the victim matched the caliber of 
a weapon owned by Ricketts.
        The 
evidence also shows that after Klozik was killed, appellant and Ricketts 
returned to the scene to look for the drugs. The physical evidence showed that 
Klozik’s body had been moved and that his right pocket had been turned inside 
out. Klozik’s vehicle was also missing, but was later found in a hotel parking 
lot in Arlington. One hundred and six point seven grams of methamphetamine were 
found tucked under a guardrail near the murder scene.
        Viewing 
the evidence in a light most favorable to the verdict, there was evidence 
showing that appellant, Ricketts, and Hocutt planned to meet Klozik in order to 
obtain possession of over 100 grams of methamphetamine that Klozik had stolen 
from appellant. The three companions planned on or contemplated using force, if 
necessary, and killing Klozik had been discussed as an option. Further, both 
Ricketts and appellant were armed with deadly weapons. Although appellant knew 
Ricketts had a gun and appellant was concerned with bringing Ricketts to the 
meeting due to his state of mind, appellant went ahead with the meeting as 
planned. Based on this record, we hold that there was legally sufficient 
evidence to show that appellant conspired to obtain the drugs and should have 
anticipated that Klozik might be killed in the effort to retrieve and possess 
the drugs. Thus, there was legally sufficient evidence to sustain the murder 
conviction.
        Appellant 
provides no evidence, record references, or analysis in support of his 
contention that the evidence is factually insufficient to support the verdict. See 
Tex. R. App. P. 38.1(h); McDuff 
v. State, 939 S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 522 
U.S. 844 (1997). Thus, appellant’s complaint is not properly presented on 
appeal. See McDuff, 939 S.W.2d at 613. The State contends that the 
only evidence supporting the contention that appellant could not have 
anticipated Klozik’s murder comes from Hocutt’s testimony that no one 
discussed killing Klozik before they met with him and that Hocutt did not know 
appellant and Ricketts were armed. In light of all the evidence presented and 
the fact that Hocutt, as a coconspirator, had an interest in not testifying that 
killing Klozik was discussed, we hold that the evidence is not so weak as to 
make the jury’s verdict clearly wrong or manifestly unjust. We overrule point 
two.
        In 
appellant’s third point, he complains that the trial court abused its 
discretion in failing to conduct a hearing on his motion for new trial. The 
rules of appellate procedure require that an accused “present” his motion 
for new trial to the trial court within specified time limits. Tex. R. App. P. 21.6; Carranza v. 
State, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). The Texas Court of Criminal 
Appeals has determined that the term “present” means “the record must show 
the movant for a new trial sustained the burden of actually delivering the 
motion for new trial to the trial court or otherwise bringing the motion to the 
attention or actual notice of the trial court.” Carranza, 960 S.W.2d at 
79 (interpreting predecessor to Tex. R. 
App. P. 21.6). Although appellant filed his motion in the trial court, 
the record fails to show that the trial court actually knew appellant had filed 
a motion for new trial and desired a hearing on it. For instance, the motion for 
new trial was accompanied by an “Acknowledgement of Presentment of Motion,” 
an “Order Setting Hearing,” and a proposed “Order,” all of which were to 
be signed by the trial court judge but are blank. Appellant has shown us no 
other evidence that he brought the motion to the trial court’s attention. 
Under the circumstances, we hold that there is no evidence that appellant 
presented the motion to the trial court. See Carranza, 960 S.W.2d at 
77-79 (holding motion not presented to trial court where it was overruled 
by operation of law, no hearing was held, no evidence showed trial court knew 
motion had been filed, and motion was filed in court with fiat and proposed 
order both of which were to be signed by judge but were blank). We overrule 
point three.
        We 
affirm the trial court’s judgment.
 
 
                                                                  SAM 
J. DAY
                                                                  JUSTICE

  
PANEL F:   DAUPHINOT 
and HOLMAN, JJ.; and SAM J. DAY, J. (Retired, Sitting by Assignment).
 
                    
DAUPHINOT, J. filed a concurring and dissenting opinion.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: February 5, 2004

 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-418-CR
 

  
JASON MATTHEW TRUVER                                                   APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
------------
FROM THE 371ST 
DISTRICT COURT OF TARRANT COUNTY
------------
CONCURRING AND 
DISSENTING OPINION
------------
        The 
majority affirms the trial court’s judgment by holding that proof of felony 
murder or conspiracy is sufficient to support a capital murder conviction. I 
must respectfully disagree.
        I 
write separately to address again the problem of treating section 7.02(b) of the 
Texas Penal Code as an alternative law of parties.[1]  
Section 7.02 is entitled “Criminal Responsibility for Conduct of Another.”[2]  Although it is often referred to as “The Law of 
Parties,” this description is inaccurate. Section 7.01 provides that “[a] 
person is criminally responsible as a party to an offense if the offense is 
committed by his own conduct, by the conduct of another for which he is 
criminally responsible, or by both.”[3]  
Section 7.02 describes the circumstances under which a person is criminally 
responsible for the conduct of another.[4]  It 
includes the law of parties in section 7.02(a), but it also includes the law of 
conspiracy in section 7.02(b).[5]   A 
person is criminally responsible for the conduct of another if he or she acts 
either as a party or as a co-conspirator.[6]   
The law of conspiracy is not the law of parties. Reading sections 7.01 and 7.02 
in conjunction appears to be a circular exercise. And it is certainly confusing. 
The purpose of section 7.01 is to do away with the distinction between primary 
actors and accomplices. It establishes equal culpability for the primary actors 
and those who, in the past, would have been mere accomplices. I do not believe 
it was intended to blur or to dissolve the line between completed and inchoate 
offenses.
        Two 
conflicting lines of cases have developed regarding the relationship between the 
law of parties and the law of conspiracy. I believe the majority opinion 
conflicts with this court’s opinion in Ex parte Brosky.[7]   In Brosky, this court held that Brosky 
could be prosecuted for conspiracy to commit murder after being convicted of 
murder as a party because conspiracy required an additional element not required 
by murder.[8]   We specifically stated that 
while criminal conspiracy requires proof of an agreement to commit an offense, 
murder as a party does not require proof of an agreement.[9]
        In 
the case now before us, the jury was instructed:

By the term “conspiracy,” 
as used in these instructions, is meant an agreement between two or more 
persons, with intent that a felony be committed, that they, or one or more of 
them, engage in conduct that would constitute the offense. An agreement 
constituting a conspiracy may be inferred from acts of the parties.
 
This definition of conspiracy 
is part of the definition of the offense of conspiracy as set out in section 
15.02(a)(1) and (b) of the Texas Penal Code.[10]
        The 
second prong of the offense of criminal conspiracy is that “[the defendant] or 
one or more of [the co-conspirators] performs an overt act in pursuance of the 
agreement.”[11]   In the case now before 
us, the jury was further instructed that it might convict Appellant of capital 
murder if it found that

[Appellant] entered into a 
conspiracy with another or others to commit the felony offense of robbery, and 
that on or about the 10th day of August, 1999, in Tarrant County, 
Texas, in the attempt to carry out this agreement . . . Jeremy Ricketts 
[committed capital murder of William Martin Klozik] and that such offense was 
committed in furtherance of the unlawful purpose to commit robbery and was an 
offense that should have been anticipated as a result of the carrying out of the 
agreement . . . .
  
In other words, the jury was 
instructed on both prongs of the offense of conspiracy.
        The 
third option of the application paragraph of the jury charge required the jury 
to find a conspiracy, a different offense from capital murder. Yet, Appellant 
was not accused of entering into a conspiracy. In Brosky, we held that 
the additional element of an agreement establishes an offense separate and apart 
from guilt as a party.[12]
        When 
a person is shown to be guilty of conspiracy under section 15.02, the person is 
criminally responsible for his or her own acts.[13] 
That is, the person is guilty of participating in a criminal conspiracy. 
Similarly, when a person is shown to have committed capital murder, that person 
is criminally responsible for his or her own acts. When, however, a person is 
proved guilty of capital murder as a party, that person is held criminally 
responsible for the acts of another. Likewise, when a person enters into a 
criminal conspiracy but a different felony is committed by a co-conspirator, he 
or she is held criminally responsible for the acts of the co-conspirator. The 
fact that there are procedural differences between prosecuting one as a party 
and prosecuting one as a co-conspirator, to me, emphasizes the distinction 
between subsections 7.02(a) and 7.02(b).
        To 
continue relying on the line of cases holding that a section 7.02(b) conspiracy 
is merely an “alternative ‘parties’ charge”[14]  
not only fosters conflicting lines of cases, but it also undermines the 
viability of Texas’s capital murder scheme by permitting conviction of capital 
murder under the guise of the law of parties without proof of the mens rea 
required by the statute.
        This 
court has addressed this same issue in the capital murder context in Wood:

Notwithstanding the 
requirement that an actor charged with capital murder must have specifically 
intended to cause the death of another, penal code section 7.02(b) explains that 
a party may still be criminally responsible for the acts of another even though 
the party did not intend for the act to occur as a result of his conduct. Tex. Penal Code Ann. § 7.02(b). Under 
this section,
 
[i]f, in the attempt to carry 
out a conspiracy to commit one felony, another felony is committed by one of the 
conspirators, all conspirators are guilty of the felony actually committed, 
though having no intent to commit it, if the offense was committed in 
furtherance of the unlawful purpose and was one that should have been 
anticipated as a result of the carrying out of the conspiracy.
 
Id. (emphasis added). 
Thus, if Wood were correct in his analysis, section 7.02(b) could never be 
applied in a capital murder prosecution because it clearly dispenses with the 
intent requirement. Wood’s argument is contrary to the plain language of 
section 7.02(b) and, as explained below, has been consistently rejected by the 
Texas courts.
 
In Ruiz v. State, 579 
S.W.2d 206 (Tex.Crim.App. [Panel Op.] 1979), a capital murder case, the court of 
criminal appeals held that section 7.02(b) eliminates the need for the State to 
prove the defendant’s intent to kill the victim as long as the evidence 
established that a felony was committed as a result of a conspiracy and the 
murder should have been anticipated in carrying out the conspiracy to commit the 
underlying felony. Id. at 209.[15]

 
        Under 
the Montoya line of cases, the jury must find that the primary actor, the 
shooter, intended to cause the victim’s death to satisfy the requisites of 
capital murder permitting the death penalty. But to convict the nonshooter as a 
party and to impose the death penalty, the jury is not required to find that the 
nonshooter intended to cause the death, even though both section 19.03(a)(2) and 
the indictment require proof of specific intent to cause the death.[16] Capital murder in the course of committing robbery 
requires an intentional murder under the statute.[17]  
Yet under the Montoya reasoning, the jury may find a defendant guilty of 
capital murder simply by finding that a co-conspirator committed a wholly 
unintended capital murder. This interpretation allows conviction on less 
evidence than required by either the statute or the indictment by dispensing 
with the intent requirement for capital murder. The jury charge should contain 
all of the fundamental elements of the offense and should not allow conviction 
on less proof than required by the statute.
        Although 
the jury charge in the case now before us requires the jury to find that the 
co-conspirator, Ricketts, intentionally caused the death of Klozik in the course 
of committing robbery, the charge permits the jury to convict Appellant of 
capital murder by finding that he had committed only the offense of conspiracy. 
I respectfully urge the Texas Court of Criminal Appeals to revisit this issue, 
not only in the interest of consistency, but also in the interest of preserving 
the viability of the Texas capital murder scheme. In any event, this court 
should either follow Brosky or disavow that opinion.
        For 
the reasons stated above, I must respectfully disagree with the majority’s 
upholding the trial court’s judgment on the basis that the State proved either 
felony murder or conspiracy. Because we are bound by the precedent established 
by the Court of Criminal Appeals, I am constrained to concur reluctantly with 
the majority’s result.
 

  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE

  
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: February 5, 2004
 

NOTES
Comment:  
Majority Opinion by Judge Day; Concurring and Dissenting Opinion by Judge 
Dauphinot.
 
MAJORITY 
NOTES
1. See Tex. R. App. P. 47.4.
2. Appellant 
was not charged with the offense of criminal conspiracy, which would have 
required notice in the indictment. See Montoya v. State, 810 S.W.2d 160, 
165 (Tex. Crim. App. 1989) (rejecting argument that indictment needed to allege 
law of parties theory as would be needed if offense of criminal conspiracy had 
been alleged), cert. denied, 502 U.S. 961 (1991).

 DISSENT NOTES
 
1. See Barnes v. State, 
56 S.W.3d 221, 240-42 (Tex. App.—Fort Worth 2001, pet. ref’d) (Dauphinot, 
J., concurring).
2. Tex. Penal Code Ann. § 7.02 (Vernon 
2003).
3. Id. 
§ 7.01.
4. Id. 
§ 7.02.
5. Id.
6. Id.
7. 863 S.W.2d 
783 (Tex. App.—Fort Worth 1993, no pet.).
8. Id. 
at 788.
9. Id. 
at 784, 788.
10. Tex. Penal Code Ann. § 15.02(a)(1), 
(b).
11. Id. 
§ 15.02(a)(2).
12. Brosky, 
863 S.W.2d at 788.
13. Tex. Penal Code Ann. § 15.02.
14. Montoya 
v. State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989), cert. denied, 
502 U.S. 961 (1991).
15. Wood 
v. State, 4 S.W.3d 85, 89 (Tex. App.—Fort Worth 1999, pet. ref’d).
16. Tex. Penal Code Ann. § 19.03(a)(2) 
(Vernon Supp. 2004).
17. Id.