Truver v. State

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-418-CR

JASON MATTHEW TRUVER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
------------

Appellant Jason Matthew Truver was charged with capital murder, found guilty of murder by a jury, and sentenced to twenty-five years’ imprisonment.  In three points, he argues that the trial court erred in overruling his objection to the State’s failure to give any notice in the indictment of its intent to rely on the law of parties in proving his culpability, the evidence is insufficient to support his conviction, and the trial court erred in not conducting a hearing on his motion for new trial.  We affirm.

On August 9, 1999, William Klozik came to appellant’s apartment to buy drugs from him.  Appellant claimed that instead of buying drugs, however, Klozik stole them.  While appellant was discussing this event with Shad Hocutt and Jeremy Ricketts, Klozik called appellant and told him that he would sell the drugs back to him.  Hocutt testified that he, Ricketts, and appellant planned to meet Klozik and get the drugs back, using force if needed. 

Appellant, Ricketts, and Hocutt went to the meeting location before Klozik arrived in order to scope out the area to ensure that no police were around.  After dropping off Ricketts and Hocutt at the location, appellant drove down the block and returned.  Meanwhile, Ricketts and Hocutt hid. 

Klozik arrived and parked his car.  After seeing a police car drive by, Hocutt became nervous and decided to leave.  As he was walking to a nearby store to call someone for a ride, he heard a gunshot.  Hocutt then ran back toward the service road where appellant was parked.  Hocutt saw Klozik running away from appellant’s car and tackled him.  Realizing Klozik did not have a gun, he let him go.  Hocutt then heard Ricketts shout, “[L]ook out.”  As Hocutt ran toward appellant’s car, he heard another gunshot behind him.  Hocutt got into the passenger seat, and appellant was already inside the car.  Ricketts ran up to the car and got into the back seat, and appellant drove them to Ricketts’s house.  At Ricketts’s house, appellant and Ricketts talked about returning to the scene, and Hocutt called his girlfriend to pick him up. 

Mike Wealand, an inmate who shared a cell with appellant while he awaited trial, testified that appellant told him about the events.  He stated that Klozik had stolen drugs from appellant and then wanted appellant to loan him money for a car.  Appellant told Wealand that he picked up two guys and went to meet Klozik.  Appellant said that when they got to the meeting location, Ricketts showed appellant that he was carrying a gun under his shirt.  Appellant told Wealand that he was also carrying a gun when he met Klozik. 

Appellant told Wealand that after arriving at the meeting location, Klozik got in his car and wanted money.  When appellant showed him an envelope, Klozik grabbed it and took off.  One of appellant’s companions knocked Klozik down, and appellant said he saw a laser light moving and then heard a shot.  Appellant and his companions then left the scene.  Appellant dropped one man off and then returned with Ricketts to the scene, retrieved the money, and took the car to another location to look for the drugs. 

The jury found appellant guilty of murder and assessed punishment at twenty-five years’ imprisonment.  This appeal ensued.

In appellant’s first point, he contends that the trial court abused its discretion in overruling his pretrial objection to the “State’s failure to give any notice of its intent to rely upon the law of parties in order to establish [his] culpability . . . and allowing the State to rely upon such unplead [sic] legal theory before the jury at trial.”  Pursuant to section 7.02(b) of the penal code, the jury was charged, among other things, that it could find appellant guilty of murder if it found that he entered into a conspiracy with another or others to commit a felony offense of possession of a controlled substance, to wit: methamphetamine of more than four grams but less than 200 grams, that in attempting to carry out this agreement, Jeremy Ricketts did then and there intentionally cause the death of Klozik by shooting him with a firearm, that such offense was committed in furtherance of the unlawful purpose of possession of methamphetamine, and that the offense should have been anticipated as a result of carrying out the agreement.  
See
 
Tex. Penal Code Ann. 
§ 7.02(b) (Vernon 2003).  Under the law of parties, there is no requirement that the State allege in the indictment facts that make the defendant individually criminally responsible for the conduct of another.
(footnote: 2)  
Marable v. State
, 85 S.W.3d 287, 292 (Tex. Crim. App. 2002) (holding that if evidence supports charge on the law of parties, then trial court may charge on the law of parties even though there is no such allegation in the indictment).  We overrule point one. 

In appellant’s second point, he contends that the evidence is legally and factually insufficient to support the verdict.  In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations. 
 Id.
 at 8-9; 
Clewis, 
922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Three options were available to the jury to find that appellant committed murder:  (1) appellant either acting alone or with another or others as a party to the offense, did then and there intentionally or knowingly cause the death of Klozik by shooting him with a firearm; (2) appellant either acting alone or with another or others as a party to the offense, did then and there intentionally, with the intent to cause serious bodily injury to Klozik, commit an act clearly dangerous to human life, namely shooting Klozik with a firearm; and (3) appellant entered into a conspiracy with another or others to commit a felony offense of possession of a controlled substance, to wit:  methamphetamine of more than four grams but less than 200 grams, that in attempting to carry out this agreement, Jeremy Ricketts did then and there intentionally cause the death of Klozik by shooting him with a firearm, that such offense was committed in furtherance of the unlawful purpose of possession of methamphetamine, and that the offense should have been anticipated as a result of carrying out the agreement.  Where the jury is authorized to convict on any one of several methods of commission of the same offense and returns a general verdict of guilty, the verdict will be upheld if the evidence is sufficient to sustain the conviction under at least one of the theories presented to the jury
.  Kitchens v. State
, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), 
cert. denied
, 504 U.S. 958 (1992);
 Patterson v. State
, 46 S.W.3d 294, 300 (Tex. App.—Fort Worth 2001, no pet.).  

In determining whether a defendant participated as a party in the commission of an offense, the fact finder may look to events that occurred before, during, or after the offense and may place reliance on acts showing an understanding and common design.  
Ransom v. State
, 920 S.W.2d 288, 302 (Tex. Crim. App.) (op. on reh’g), 
cert. denied
, 519 U.S. 1030 (1996).  An agreement of the parties to act together in a common design seldom can be proven by direct evidence; reliance, therefore, may be placed upon the actions of the parties, showing either by direct or circumstantial evidence an understanding and common design to do a certain act.  
Burdine v. State
, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), 
cert. denied
, 480 U.S. 940 (1987);  
Rivera v. State
, 990 S.W.2d 882, 887 (Tex. App.—Austin 1999, pet. ref’d), 
cert. denied
, 528 U.S. 1168 (2000). 

Under Texas Penal Code section 7.02, a person is criminally responsible for an offense committed by the conduct of another if:  

[I]n the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. 

Tex. Penal Code Ann. 
§ 7.02(b).  Although the penal code provides no definition for “conspiracy” as that term is used in section 7.02(b), the trial court properly defined the term for the jury using its commonly understood meaning:

[A]n agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense.  An agreement constituting a conspiracy may be inferred from acts of the parties.

See Ladd v. State
, 3 S.W.3d 547, 565 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000). 

If there is evidence to support the conviction under section 7.02(b), the State did not need to prove that appellant had the intent to kill Klozik.  
See Ruiz

v. State
, 579 S.W.2d 206, 209 (Tex. Crim. App. [Panel Op.] 1979);
 Barnes v. State
, 56 S.W.3d 221, 228-29 (Tex. App.—Fort Worth 2001, pet. ref’d).  Under section 7.02(b), the State was required only to prove that Klozik’s murder should have been anticipated as a result of carrying out the conspiracy to possess the methamphetamine.  
See
 
Tex. Penal Code Ann. 
§ 7.02(b); 
Barnes
, 56 S.W.3d at 228-29. 

Three witnesses provided testimony that supports the jury’s finding that appellant engaged in a conspiracy to possess methamphetamine, and in the furtherance of committing that unlawful purpose, Ricketts murdered Klozik, and the murder should have been anticipated.  Hocutt testified that after Klozik stole the drugs from appellant, he, Ricketts, and appellant discussed getting the drugs back from him.  Hocutt told appellant that if Klozik refused to return the drugs, they could beat him up and get the drugs back.  After appellant received Klozik’s call, Hocutt, appellant, and Ricketts went to the meeting place to get the drugs back.  Hocutt believed that Ricketts shot Klozik. 

Shannon Slape, Ricketts’s girlfriend, testified that she was at Ricketts’s house when appellant came over and told Ricketts and Hocutt that Klozik had stolen drugs from him.  She heard Hocutt, Ricketts, and appellant discussing how to get the drugs back from Klozik.  She also overheard the three men talking about beating up Klozik or even killing him.  She never thought someone would actually be killed, however.

Wealand testified that appellant told him that he and two other companions went to meet Klozik to get the drugs back after Klozik stole them.  Appellant told Wealand that he was aware Ricketts had been drinking on the day of the murder and that Ricketts had been having trouble with his girlfriend.  He told Wealand that he almost left Ricketts behind because he was concerned about Ricketts’s attitude.  Wealand also testified that when the three companions got close to the meeting place, Ricketts pulled up his shirt and showed appellant that he was carrying a gun.  Appellant said that he almost turned around to take Ricketts back, but Klozik called him at about the same time; consequently, he decided to go ahead with the meeting.  Finally, appellant told Wealand that appellant was also carrying a gun when he went to meet Klozik.  Appellant’s weapon was recovered by the police from appellant’s apartment after the murder; it was loaded and had a bullet in the chamber.  Ricketts’s weapon was never found, but the caliber of the fragmented bullet found in the victim matched the caliber of a weapon owned by Ricketts.

The evidence also shows that after Klozik was killed, appellant and Ricketts returned to the scene to look for the drugs.  The physical evidence showed that Klozik’s body had been moved and that his right pocket had been turned inside out.  Klozik’s vehicle was also missing, but was later found in a hotel parking lot in Arlington.  One hundred and six point seven grams of methamphetamine were found tucked under a guardrail near the murder scene.

Viewing the evidence in a light most favorable to the verdict, there was evidence showing that appellant, Ricketts, and Hocutt planned to meet Klozik in order to obtain possession of over 100 grams of methamphetamine that Klozik had stolen from appellant.  The three companions planned on or contemplated using force, if necessary, and killing Klozik had been discussed as an option.  Further, both Ricketts and appellant were armed with deadly weapons.  Although appellant knew Ricketts had a gun and appellant was concerned with bringing Ricketts to the meeting due to his state of mind, appellant went ahead with the meeting as planned.  Based on this record, we hold that there was legally sufficient evidence to show that appellant conspired to obtain the drugs and should have anticipated that Klozik might be killed in the effort to retrieve and possess the drugs.  Thus, there was legally sufficient evidence to sustain the murder conviction.

Appellant provides no evidence, record references, or analysis in support of his contention that the evidence is factually insufficient to support the verdict.  
See
 
Tex. R. App. P. 38.1
(h); 
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  Thus, appellant’s complaint is not properly presented on appeal.  
See
 
McDuff
, 939 S.W.2d at 613.  The State contends that the only evidence supporting the contention that appellant could not have anticipated Klozik’s murder comes from Hocutt’s testimony that no one discussed killing Klozik before they met with him and that Hocutt did not know appellant and Ricketts were armed.  In light of all the evidence presented and the fact that Hocutt, as a coconspirator, had an interest in not testifying that killing Klozik was discussed, we hold that the evidence is not so weak as to make the jury’s verdict clearly wrong or manifestly unjust.  We overrule point two.  

In appellant’s third point, he complains that the trial court abused its discretion in failing to conduct a hearing on his motion for new trial.  The rules of appellate procedure require that an accused “present” his motion for new trial to the trial court within specified time limits.  
Tex. R. App. P. 
21.6; 
Carranza v. State
, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998).  The Texas Court of Criminal Appeals has determined that the term “present” means “the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court.”  
Carranza
, 960 S.W.2d at 79 (interpreting predecessor to 
Tex. R. App. P. 
21.6).  Although appellant filed his motion in the trial court, the record fails to show that the trial court actually knew appellant had filed a motion for new trial and desired a hearing on it.  For instance, the motion for new trial was accompanied by an “Acknowledgement of Presentment of Motion,” an “Order Setting Hearing,” and a proposed “Order,” all of which were to be signed by the trial court judge but are blank.  Appellant has shown us no other evidence that he brought the motion to the trial court’s attention.  Under the circumstances, we hold that there is no evidence that appellant presented the motion to the trial court.
  See Carranza
, 960 S.W.2d at 77-79 (holding motion not 
presented
 to trial court where it was overruled by operation of law, no hearing was held, no evidence showed trial court knew motion had been filed, and motion was filed in court with fiat and proposed order both of which were to be signed by judge but were blank).  We overrule point three. 

We affirm the trial court’s judgment.

SAM J. DAY

JUSTICE

PANEL F: DAUPHINOT and HOLMAN, JJ.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DAUPHINOT, J. filed a concurring and dissenting opinion.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: February 5, 2004

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-418-CR

JASON MATTHEW TRUVER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

CONCURRING AND DISSENTING OPINION

------------

The majority affirms the trial court’s judgment by holding that proof of felony murder or conspiracy is sufficient to support a capital murder conviction.  I must respectfully disagree. 

I write separately to address again the problem of treating section 7.02(b) of the Texas Penal Code as an alternative law of parties.
(footnote: 1)  Section 7.02 is entitled “Criminal Responsibility for Conduct of Another.”
(footnote: 2)  Although it is often referred to as “The Law of Parties,” this description is inaccurate.  Section 7.01 provides that “[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.”
(footnote: 3)  Section 7.02 describes the circumstances under which a person is criminally responsible for the conduct of another.
(footnote: 4)  It includes the law of parties in section 7.02(a), but it also includes the law of conspiracy in section 7.02(b).
(footnote: 5)  A person is criminally responsible for the conduct of another if he or she acts either as a party or as a co-conspirator.
(footnote: 6)  The law of conspiracy is not the law of parties.  Reading sections 7.01 and 7.02 in conjunction appears to be a circular exercise.  And it is certainly confusing.  The purpose of section 7.01 is to do away with the distinction between primary actors and accomplices.  It establishes equal culpability for the primary actors and those who, in the past, would have been mere accomplices.  I do not believe it was intended to blur or to dissolve the line between completed and inchoate offenses.

Two conflicting lines of cases have developed regarding the relationship between the law of parties and the law of conspiracy.  I believe the majority opinion conflicts with this court’s opinion in 
Ex parte Brosky
.
(footnote: 7)  In 
Brosky
, this court held that Brosky could be prosecuted for conspiracy to commit murder after being convicted of murder as a party because conspiracy required an additional element not required by murder.
(footnote: 8)  We specifically stated that while criminal conspiracy requires proof of an agreement to commit an offense, murder as a party does not require proof of an agreement.
(footnote: 9) 

In the case now before us, the jury was instructed:

By the term “conspiracy,” as used in these instructions, is meant an agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense.  An agreement constituting a conspiracy may be inferred from acts of the parties.

This definition of conspiracy is part of the definition of the offense of conspiracy as set out in section 15.02(a)(1) and (b) of the Texas Penal Code.
(footnote: 10)
 The second prong of the offense of criminal conspiracy is that “[the defendant] or one or more of [the co-conspirators] performs an overt act in pursuance of the agreement.”
(footnote: 11)  In the case now before us, the jury was further instructed that it might convict Appellant of capital murder if it found that

[Appellant] entered into a conspiracy with another or others to commit the felony offense of robbery, and that on or about the 10
th
 day of August, 1999, in Tarrant County, Texas, in the attempt to carry out this agreement . . . Jeremy Ricketts [committed capital murder of William Martin Klozik] and that such offense was committed in furtherance of the unlawful purpose to commit robbery and was an offense that should have been anticipated as a result of the carrying out of the agreement . . . .

In other words, the jury was instructed on both prongs of the offense of conspiracy.  

The third option of the application paragraph of the jury charge required the jury to find a conspiracy, a different offense from capital murder.  Yet, Appellant was not accused of entering into a conspiracy.  In 
Brosky
, we held that the additional element of an agreement establishes an offense separate and apart from guilt as a party.
(footnote: 12) 

When a person is shown to be guilty of conspiracy under section 15.02, the person is criminally responsible for his or her own acts.
(footnote: 13)  That is, the person is guilty of participating in a criminal conspiracy.  Similarly, when a person is shown to have committed capital murder, that person is criminally responsible for his or her own acts.  When, however, a person is proved guilty of capital murder as a party, that person is held criminally responsible for the acts of another.  Likewise, when a person enters into a criminal conspiracy but a different felony is committed by a co-conspirator, he or she is held criminally responsible for the acts of the co-conspirator.  The fact that there are procedural differences between prosecuting one as a party and prosecuting one as a co-conspirator, to me, emphasizes the distinction between subsections 7.02(a) and 7.02(b).

To continue relying on the line of cases holding that a section 7.02(b) conspiracy is merely an “alternative ‘parties’ charge”
(footnote: 14) not only fosters conflicting lines of cases, but it also undermines the viability of Texas’s capital murder scheme by permitting conviction of capital murder under the guise of the law of parties without proof of the mens rea required by the statute.  

This court has addressed this same issue in the capital murder context in 
Wood
:

Notwithstanding the requirement that an actor charged with capital murder must have specifically intended to cause the death of another, penal code section 7.02(b) explains that a party may still be criminally responsible for the acts of another even though the party did not intend for the act to occur as a result of his conduct.  
Tex. Penal Code Ann.
 § 7.02(b).  Under this section,

[i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.  

Id.
 (emphasis added).  Thus, if Wood were correct in his analysis, section 7.02(b) could never be applied in a capital murder prosecution because it clearly dispenses with the intent requirement.  Wood’s argument is contrary to the plain language of section 7.02(b) and, as explained below, has been consistently rejected by the Texas courts.

In 
Ruiz v. State
, 579 S.W.2d 206 (Tex.Crim.App. [Panel Op.] 1979), a capital murder case, the court of criminal appeals held that section 7.02(b) eliminates the need for the State to prove the defendant’s intent to kill the victim as long as the evidence established that a felony was committed as a result of a conspiracy and the murder should have been anticipated in carrying out the conspiracy to commit the underlying felony
.  Id.
 at 209.
(footnote: 15)

Under the 
Montoya
 line of cases, the jury must find that the primary actor, the shooter, intended to cause the victim’s death to satisfy the requisites of capital murder permitting the death penalty.  But to convict the nonshooter as a party and to impose the death penalty, the jury is not required to find that the nonshooter intended to cause the death, even though both section 19.03(a)(2) and the indictment require proof of specific intent to cause the death.
(footnote: 16)  Capital murder in the course of committing robbery requires an intentional murder under the statute.
(footnote: 17)  Yet under the 
Montoya 
reasoning, the jury may find a defendant guilty of capital murder simply by finding that a co-conspirator committed a wholly unintended capital murder.  This interpretation allows conviction on less evidence than required by either the statute or the indictment by dispensing with the intent requirement for capital murder.  The jury charge should contain all of the fundamental elements of the offense and should not allow conviction on less proof than required by the statute.

Although the jury charge in the case now before us requires the jury to find that the co-conspirator, Ricketts, intentionally caused the death of Klozik in the course of committing robbery, the charge permits the jury to convict Appellant of capital murder by finding that he had committed only the offense of conspiracy.  I respectfully urge the Texas Court of Criminal Appeals to revisit this issue, not only in the interest of consistency, but also in the interest of preserving the viability of the Texas capital murder scheme.  In any event, this court should either follow 
Brosky
 or disavow that opinion.

For the reasons stated above, I must respectfully disagree with the majority’s upholding the trial court’s judgment on the basis that the State proved either felony murder or conspiracy
.  
Because we are bound by the precedent established by the Court of Criminal Appeals, I am constrained to concur reluctantly with the majority’s result.

LEE ANN DAUPHINOT

JUSTICE

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 5, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Appellant was not charged with the offense of criminal conspiracy, which would have required notice in the indictment.  
See Montoya v. State
, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989) (rejecting argument that indictment needed to allege law of parties theory as would be needed if offense of criminal conspiracy had been alleged), 
cert. denied
, 502 U.S. 961 (1991). 

1:
See Barnes v. State
,
 56 S.W.3d 221, 240-42 (Tex. App.—Fort Worth 2001, pet. ref’d) (Dauphinot, J., concurring).

2:
Tex. Penal Code Ann.
 § 7.02 (Vernon 2003).

3:
Id.
 § 7.01.

4:
Id.
 § 7.02.

5:
Id.

6:
Id.

7:
863 S.W.2d 783 (Tex. App.—Fort Worth 1993, no pet.).

8:
Id.
 at 788.

9:
Id.
 at 784, 788.

10:
Tex. Penal Code Ann.
 § 15.02(a)(1), (b).

11:
Id.
 § 15.02(a)(2).

12:
Brosky
, 863 S.W.2d at 788.

13:
Tex. Penal Code Ann.
 § 15.02.

14:
Montoya v. State
, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989), 
cert. denied
, 502 U.S. 961 (1991).

15:
Wood v. State
, 4 S.W.3d 85, 89 (Tex. App.—Fort Worth 1999, pet. ref’d).

16:
Tex. Penal Code Ann.
 § 19.03(a)(2) (Vernon Supp. 2004).

17:
Id.

COMMENTS AND ANNOTATIONS
Comment 1:
Majority Opinion by Judge Day; Concurring and Dissenting Opinion by Judge Dauphinot.