# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00494-CR

---

**Gloria Elizabeth Romero-Perez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 274TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2016-659, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Gloria Elizabeth Romero-Perez of the offense of continuous trafficking of persons and assessed punishment at 25 years' imprisonment. *See* Tex. Penal Code § 20A.03. The district court sentenced Romero-Perez in accordance with the jury's verdict. In a single point of error on appeal, Romero-Perez asserts that the district court erred in including an instruction on criminal conspiracy in the jury charge. We will affirm the judgment.

## BACKGROUND

The State charged Romero-Perez with trafficking her niece, A.L. ("Abby"), who was fifteen years old at the time of the offense.[1] According to the evidence presented at trial, when Abby was thirteen years old, Romero-Perez paid approximately $6,000 to smuggle Abby

---

[1] We refer to the child by a pseudonym to protect her identity.

and the child's grandmother into the United States.  Upon Abby's arrival in Texas, she lived with Romero-Perez, who acted as the child's primary caretaker.

Abby and Romero-Perez did not get along well, and Abby was sent to live temporarily with Romero-Perez's sister.  There, Abby met Julio Jimenez, a 33-year-old man, and developed a relationship with him.  When Abby returned to Romero-Perez, that relationship continued, and at one point she ran away from home and stayed with Jimenez.  When Romero-Perez learned of this, she called Jimenez and told him that she wanted to talk to him "about the situation that was happening with [Abby]."  She explained to Jimenez that she and Abby were "having problems" and "could not live together" anymore but that Romero-Perez had paid $6,000 to "bring her here," and "if she's going to be with you, then you have to pay me that money that I paid to—to bring her over here."  A meeting was arranged between Romero-Perez and Jimenez to discuss the matter further, and at the conclusion of the meeting, Romero-Perez and Jimenez agreed that Jimenez would pay her $700 per month in exchange for Romero-Perez allowing Abby and Jimenez to live together.  Abby was fifteen years old when Romero-Perez made the agreement with Jimenez.  The State presented testimonial and documentary evidence of the agreement and the payments that Jimenez made.

After the meeting, Abby went to live with Jimenez, and they had sexual intercourse at Jimenez's residence on multiple occasions, with Abby eventually becoming pregnant.  At some point thereafter, Jimenez refused to make further payments to Romero-Perez, and Romero-Perez later reported to the police that Abby was a runaway, that she was living with Jimenez, and that Abby was pregnant with Jimenez's child.  During the subsequent investigation, the police learned of the agreement between Jimenez and Romero-Perez and charged them both with trafficking offenses.  Jimenez pleaded guilty to the offenses of continuous trafficking of

2

persons, sale or purchase of a child, sexual assault of a child, and indecency with a child by contact. He was sentenced to 30 years' imprisonment for trafficking, 10 years' imprisonment for sale or purchase of a child, and 20 years' imprisonment for sexual assault and indecency, with the sentences to run concurrently. Romero-Perez was acquitted of the offense of sale or purchase of a child but convicted of continuous trafficking of persons and sentenced to 25 years' imprisonment as noted above. This appeal followed.[2]

## STANDARD OF REVIEW

We review claims of jury-charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). First, we must determine if there is error in the charge. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). "If there is error, then a harm analysis must be conducted." *Id*. If the defendant objected to the charge at trial, "the record need show only 'some harm' to justify reversal of the conviction." *Id*. (quoting *Almanza*, 686 S.W.2d at 171). However, if the defendant failed to object, "the error will not result in reversal of the conviction without a showing of egregious harm." *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015).

Romero-Perez did not object to the charge in the court below. Thus, "reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*,

---

[2] A more detailed summary of the facts and procedural history of this case may be found in this Court's previous opinion addressing Romero-Perez's trial. *See State v. Romero-Perez*, No. 03-18-00122-CR, 2020 WL 1472361 (Tex. App.—Austin Mar. 26, 2020, pet. ref'd) (mem. op., not designated for publication) (reversing trial court's order granting Romero-Perez new trial).

3

453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id*. "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id*. (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Reeves*, 420 S.W.3d at 816.

## DISCUSSION

In her sole point of error, Romero-Perez asserts that the district court erred by including the following instruction on criminal conspiracy in the abstract portion of the jury charge:

A person commits criminal conspiracy if, with intent that a felony be committed:

> (1) she agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

> (2) she or one or more of them performs an overt act in pursuance of the agreement.

An agreement constituting a conspiracy may be inferred from acts of the parties.

It is no defense to prosecution for criminal conspiracy that:

> (1) one or more of the coconspirators is not criminally responsible for

4

the object offense;

    (2)      one or more of the coconspirators has been acquitted, so long as two or more coconspirators have not been acquitted;

    (3)      one or more of the coconspirators has not been prosecuted or convicted, has been convicted of a different offense, or is immune from prosecution;

    (4)      the actor belongs to a class of persons that by definition of the object offense is legally incapable of committing the object offense in an individual capacity; or

    (5)      the object offense was actually committed.

The above instruction tracked the language of the criminal-conspiracy statute. *See* Tex. Penal Code § 15.02(a)-(c). Romero-Perez contends that it should not have been included in the charge because the indictment did not allege that she engaged in a criminal conspiracy. In her view, including this instruction in the charge violated the rule that "[t]he jury charge must not enlarge the offense alleged and authorize the jury to convict the defendant on a basis or theory permitted by the jury charge but not alleged in the indictment." *See Castillo v. State*, 7 S.W.3d 253, 258 (Tex. App.—Austin 1999, pet. ref'd) (citing *Fella v. State*, 573 S.W.2d 548, 548 (Tex. Crim. App. 1978)).

We disagree. A conspiracy instruction is properly included in a jury charge either when a conspiracy is alleged as an offense, *see* Tex. Penal Code § 15.02, or when a conspiracy forms a possible basis for a defendant's criminal responsibility for another's conduct under the law of parties, *see English v. State*, 592 S.W.2d 949, 953-55 (Tex. Crim. App. 1980). Considered in the context in which the conspiracy instruction was given here, it is apparent that

5

the instruction was included in connection with the court's instruction on the law of parties. That instruction provided the following:

A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both.

Each party to an offense may be charged with commission of the offense.

A person is criminally responsible for an offense committed by the conduct of another if:

1. acting with the kind of culpability required for the offense, she causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

2. acting with intent to promote or assist the commission of the offense, she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

3. having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, she fails to make a reasonable effort to prevent commission of the offense.

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

This instruction on the law of parties, which immediately preceded the instruction on conspiracy, tracked the statutory language defining the law of parties. *See* Tex. Penal Code §§ 7.01-.02. Romero-Perez does not claim that the instruction on the law of parties was in any way improper.

6

The Court of Criminal Appeals has held that when an instruction on criminal conspiracy is included in the jury charge in connection with a proper instruction on the law of parties, the conspiracy instruction is not erroneous. *See Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). In that case, the trial court instructed the jury as follows:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, then all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out the conspiracy. Capital Murder, murder, robbery, and attempted robbery are felonies.

> By the term "conspiracy" as used in these instructions, is meant an agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense. An agreement constituting a conspiracy may be inferred from acts of the parties.

*Id*. at 164. The court concluded that such an instruction "did not instruct the jury to consider whether appellant was guilty of the separate offense of criminal conspiracy" but instead provided the jury with "an alternative 'parties' charge." *Id*. at 165. The court explained that "[i]t is well accepted that the law of parties may be applied to a case even though no such allegation is contained in the indictment" and that "[t]his rule applies not only to the law of parties found in Section 7.02(a)(2) [of the Penal Code] but also the law of parties found in Section 7.02(b)," i.e., the paragraph involving conspiracy. *Id*.; *see also Cucuta v. State*, No. 08–15–00027–CR, 2018 WL 1026449, at *3-4 (Tex. App.—El Paso Feb. 23, 2018, pet. ref'd) (not designated for publication) (following *Montoya*); *Rayo v. State*, No. 05–1600895–CR, 2017 WL 3097659, at *2-3 (Tex. App.—Dallas July 21, 2017, no pet.) (mem. op., not designated for publication) (same); *Ward v. State*, No. 14–15–00473–CR, 2016 WL 6238339, at *3-4 (Tex. App.—Houston

7

[14th Dist.] Oct. 25, 2016, pet. ref'd) (mem. op., not designated for publication) (same); *Gilmore v. State*, 397 S.W.3d 226, 245 (Tex. App.—Fort Worth 2012, pet. ref'd) (same); *Depue v. State*, No. 04-08-00487-CR, 2009 WL 5150069, at *6 (Tex. App.—San Antonio Dec. 30, 2009, no pet.) (mem. op., not designated for publication) (same).

Romero-Perez acknowledges *Montoya* but claims that this case is distinguishable because the instruction here went beyond the definition of conspiracy provided in *Montoya* and instead provided the jury with the entire text of the conspiracy statute, which she claims was improper. However, by including the entire text of the conspiracy statute in the charge, the court provided the jury with additional information explaining conspiracy under Texas law, and because the explanation in the charge tracked the language of the conspiracy statute, we cannot conclude that the district court erred by including it. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge."); *see also Ladd v. State*, 3 S.W.3d 547, 565 (Tex. Crim. App. 1999) ("discern[ing] no error" in trial court instructing jury on "commonly understood meaning" of conspiracy even though trial court was not required to do so).

Additionally, even if the district court had erred in instructing the jury on criminal conspiracy, we cannot conclude on this record that it entitled Romero-Perez to reversal of her conviction. Again, because she did not object to the charge, she would be entitled to reversal only if the error caused her egregious harm. It did not.

First, we consider the entirety of the charge. Although the abstract portion of the charge included an instruction on conspiracy, no corresponding instruction was included in the application paragraph of the charge, which tracked the allegations in the indictment. "It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction."

8

*Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *see Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd). Thus, "where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious." *Kuhn*, 393 S.W.3d at 529; *see also Crenshaw*, 378 S.W.3d at 466 ("An abstract charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory."); *O'Brien v. State*, 482 S.W.3d 593, 611-12 (Tex. App.—Houston [1st Dist. 2015) (concluding that charge itself did not support finding of egregious harm where abstract instruction on conspiracy was not incorporated into application paragraph of charge, which "accurately tracked the indictment"), *aff'd on other grounds*, 544 S.W.3d 376 (Tex. Crim. App. 2018).

Next, we consider the state of the evidence. Romero-Perez asserts that most of the evidence at trial concerned the actions of Jimenez rather than Romero-Perez and that the conspiracy language allowed the jury to convict her of what Jimenez had done. However, as we explained in our previous opinion addressing this case, there was sufficient evidence to establish that Romero-Perez was responsible, based on her own actions, for trafficking Abby. *See State v. Romero-Perez*, No. 03-18-00122-CR, 2020 WL 1472361, at *9-10 (Tex. App.—Austin Mar. 26, 2020, pet. ref'd) (mem. op., not designated for publication). Abby testified that she did not have sex with Jimenez until after the meeting at which Romero-Perez made an agreement with Jimenez to receive payment in exchange for him "taking" the child to live with him. *Id.* at 9. Abby also testified that Romero-Perez provided Jimenez with condoms, and both she and Jimenez testified that they believed that Romero-Perez was "selling" Abby to Jimenez at the meeting. *Id.* The jury could have reasonably inferred from this evidence that "Romero-Perez's actions in arranging the meeting, negotiating the agreement, and providing condoms to Jimenez

9

encouraged Jimenez either to initiate sexual conduct with the child or, if he had already done so, to continue engaging in sexual conduct with the child." *Id.* Moreover, when the meeting took place, Abby had left Jimenez's residence and was staying with her grandmother, and Abby testified that she wanted to live with her grandmother, who had agreed that Abby could live with her. *Id.* From this, "the jury could have reasonably inferred that but for Romero-Perez's agreement with Jimenez for him to 'take' the child in exchange for payment, the child would not have moved in with Jimenez." *Id.* There was also evidence that Romero-Perez received multiple payments from Jimenez in accordance with their agreement and that Romero-Perez had control of Abby as her primary caretaker. *Id.* at 10. The jury could have reasonably inferred that in exercising that control, Romero-Perez made Abby available to Jimenez by allowing her to live with him and continued to make Abby available to Jimenez by failing to report him to authorities until several months after she had directed or allowed Abby to live with Jimenez and after she had accepted multiple payments from Jimenez. *Id.* Because the evidence clearly supports Romero-Perez's guilt as a principal actor in the offense, this militates against a finding of egregious harm. *See Gilmore*, 397 S.W.3d at 245-46.

Finally, we consider the arguments of counsel and any other relevant information revealed by the trial record as a whole. The State did mention the conspiracy instruction in its closing argument. However, that reference was limited:

> You get some talk of criminal conspiracy, so that's why the additional definition of criminal conspiracy is—is included. In there she just has to agree with one or more persons that they engaged in conduct that would constitute an offense—any one of the felony offenses committed in this case—and that she performs an overt act, which we all know happened here. And I'll go into that in a little more detail here in a second.

10

> You can infer these acts—the conspiracy from the acts of the parties. And then it's no defense what happened with the other conspirators in the case basically. And I won't go through every single one of them. Y'all can go back through that if you want to.

Rather than focusing on the conspiracy instruction, the State focused primarily on Romero-Perez's own actions, summarized above, and how those actions made her guilty of the charged offense of trafficking. We also observe that the State referred briefly to a conspiracy and "co-conspirator[s] . . . or codefendants" during jury selection, but the references were in connection with the law of parties rather than the offense of conspiracy.

In sum, none of the above factors weigh in favor of a finding of egregious harm. Accordingly, we cannot conclude on this record that the district court's instruction on conspiracy, even if erroneous, entitles Romero-Perez to reversal of her conviction.

We overrule Romero-Perez's sole point of error.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____
Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed: August 10, 2023

Do Not Publish

11